CHARLES T. FOLEY, administrator, *vs.* D. EARLE OSGOOD.

Essex.    December 4, 1935. — January 28, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Negligence,* Motor vehicle, In use of way.

No negligence of the driver of an automobile was shown by evidence that while he was driving at the rate of twenty-five miles an hour, a boy whom he had seen and reasonably expected to stop on the sidewalk, suddenly ran head down into the street from in front of a parked vehicle and struck the automobile and was killed, and that on seeing the boy in the street, he had applied his brakes and had tried to turn his automobile away from the boy.

TORT.    Writ dated December 16, 1932.

The action was tried in the Superior Court before *Cox,* J.

*J. A. Donovan,* (*J. M. Hargedon & F. A. Bernadin* with him,) for the plaintiff.

*J. W. Sullivan & J. F. Doyle,* for the defendant, submitted a brief.

CROSBY, J.    This is an action brought by the administrator of the estate of John T. Foley to recover for causing the death of the plaintiff's decedent, seven years and seven months old, who came into collision with an automobile operated by the defendant near the corner of East and Bates streets, in Methuen, in this Commonwealth.    At the close of the evidence the defendant filed a motion for a directed verdict, which was denied.    The jury returned a verdict for the plaintiff in the sum of $4,000.    Before the verdict was recorded the judge reserved leave to enter a verdict for the defendant.    The defendant filed a motion that a verdict be entered for the defendant under the leave reserved; this motion was granted.    To the ruling of the judge allowing the motion and entering the verdict for the defendant, the plaintiff excepted.

Cyril Feugill, a police officer of Methuen, called by the plaintiff, testified as follows: On November 18, 1932, there

was an accident at the corner of East and Bates streets in
that town.  He went with a motor vehicle inspector to a
hospital in Lawrence, met the defendant there, and had
some conversation with him.  The defendant said he was
coming toward Lawrence and operating his automobile at
a speed of about twenty or twenty-five miles an hour; that
when he reached a point on East Street, about twenty-four
feet and eight inches from Bates Street, he saw two boys
running south on Bates Street toward East Street; that
when they reached East Street they stopped on the sidewalk
beside an electric light pole; that when he was about sixteen
feet from Bates Street he saw a third boy running along
Bates Street, and instead of stopping at the corner where
the other two boys were, as he expected, the third boy ran
out into the intersection of Bates and East streets; and
that he (the defendant) put on his brakes and turned to the
left to avoid hitting the boy.  The defendant indicated a
place in the road which would be in the middle of East
Street, about four feet from the east side of Bates Street,
"that would be in the intersection . . . where his machine
struck the boy, — nearer to Lawrence from the east side
of Bates Street."  The attorney for the defendant read the
following statement to refresh the recollection of the wit-
ness: "Three boys playing ran out from Bates Street, the
first two stopped at a telephone pole — third boy ran up to
them, put his hands on pole as though to stop and after
looking up the road ran quickly to cross the road and ran
into side of car, hitting the mudguard near the running
board, and his head probably hitting the hinge of the door.
We picked the boy up and placed him in the car . . . -. The
car parked on sidewalk partly prevented seeing these boys."
It is further recited in the record that "The foregoing state-
ment was taken from a report of the accident made by the
defendant, and the witness said he made a similar statement
to him at the scene of the accident."

The defendant testified that on the day of the accident
"He was driving along East Street, approaching Bates
Street, at about twenty-five miles an hour.  When he
approached Bates Street, there was a parked car on his

right hand side, about thirty-two feet back from the corner . . . that as he approached the corner the parked car interfered with his clearly seeing the whole corner in front of him; that as he approached it that parked car was in front of him and did obstruct his view of the corner; that it was a hard question to answer whether or not the parked car had anything to do with the accident, in connection with the Foley boy." He further testified that "When he approached Bates Street, he saw two boys running out of Bates Street, and stopping at the pole. Two boys ran quickly to the post, which is at the corner, and put their hands on it and stopped there . . . . Then he saw the third boy rush out, put his hand on the post and swing as if he was just touching the post as the other boys did to stop, but instead of stopping he swung, which brought him toward the car, and he ran out into the street, head down."

The plaintiff called as a witness Frank Fichera, who was eight years old. He testified that he was with John Foley when he was struck; that they came down Bates Street on the sidewalk; that there was a parked automobile there; that John Foley "was crossing the sidewalk in front of the parked machine and the other machine came along and struck him." On cross-examination he testified that there was another boy with them named Peterson; that John Foley was first, and he was last, but that he and Peterson stayed on the sidewalk; and that they were going to get some apples. Ralph Peterson, the other boy who was with John Foley when he was hurt, testified that he was eight years old, and was five and one half years old at the time John Foley was injured; that he came down Bates Street with the Fichera boy and the Foley boy; that "Foley ran across the street where there was a parked car, and there was another car coming and it struck him; that they had stopped, that John Foley was ahead; that he went right up in front of the car and then he got hit." On cross-examination he testified that "he just remembered that they were all running down and that he and the other boy stopped and John Foley ran right out into the street."

William Ellwood, sixteen years of age, testified that at

the time of the accident he was thirteen years old; that when the automobile in which he was riding with the defendant was about one hundred yards from the scene of the accident, it was going at a speed of twenty-five or thirty miles an hour; that as they came along there he first saw three boys standing on the corner; that they stood still for an instant and then turned away and ran; that when the automobile hit the boy it swerved to the left; and that the boy was hit near the running board on his side of the automobile. On cross-examination this witness testified that the Foley boy stood still first and then ran across the street.

The evidence would not warrant a finding that the defendant was negligent in the operation of his automobile. There is nothing to indicate that he should have known that the boy would run out into the street and come in contact with the automobile. The defendant was justified in believing that the boy would remain on the sidewalk with his two companions, at least until he had passed by them. He had no reason to believe that the boy would leave his companions on the sidewalk and run into the defendant's automobile. *West* v. *Medford,* 255 Mass. 266. *Ellis* v. *Ellison,* 275 Mass. 272. *Costa* v. *Slade,* 281 Mass. 200. The case is distinguishable from *Conrad* v. *Mazman,* 287 Mass. 229. In that case all the evidence relating to the conduct of the plaintiff's intestate did not appear in the record.

In view of the conclusion reached it is unnecessary to determine whether a want of due care on the part of the plaintiff's intestate precluded recovery.

It follows that the entry must be

*Exceptions overruled.*